UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22724-Civ-COOKE
    (03-20483-Cr-COOKE)
MAGISTRATE JUDGE P. A. WHITE

CAREY LEE WILLIAMS,    :

       Movant,     :

v.                 :     **REPORT OF MAGISTRATE JUDGE**
                    **RECOMMENDING THAT MOTION BE GRANTED**
UNITED STATES OF AMERICA  :     **FOLLOWING EVIDENTIARY HEARING**

       Respondent.    :
_____

Introduction

    This matter is before this Court on the movant's motion to vacate, attacking his convictions and sentences for conspiracy to import five kilograms or more of cocaine, possession with intent to distribute five kilograms or more of cocaine, two counts of aiding and abetting the importation of 500 grams or more of cocaine, and two counts of aiding and abetting the importation of five kilograms or more of cocaine, entered following a jury verdict in case no. 03-20483-Cr-Cooke.

    This Court has reviewed the motion (Cv-DE#1) with supporting statements and affidavits (Cv-DE#s19,20,24,25,27), the government's response with exhibits (Cv-DE#18), the movant's reply (Cv-DE#23)[1], the PSI, and the underlying criminal file.

    Construing the movant's claims liberally as afforded *pro se* litigants, pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant appears to raise the following claims:

        1.   He was denied effective assistance of
            counsel, where his lawyer failed to

_____

[1]It appears the reply was docketed twice. See Cv-DE#s21,23.

advise the movant regarding the benefits of pleading guilty versus proceeding to trial. (Cv-DE#1:4).

2.   He was denied effective assistance of counsel, where his lawyer failed to file a pretrial motion to suppress evidence, and to seek dismissal of the indictment. (Cv-DE#1:5).

3.   He was denied effective assistance of counsel, where his lawyer failed to present material, exculpatory evidence and testimony at trial, and further failed to object to the unlawful admission of evidence by the prosecution. (Cv-DE#1:6).

4.   He was denied effective assistance of counsel, where his lawyer misadvised and/or otherwise precluded the movant from testifying on his own behalf at trial. (Cv-DE#1:7).

5.   He was denied effective assistance of counsel, where his lawyer failed to request appropriate jury instructions and to lodge objections to the proposed instructions. (Cv-DE#1:8). He also maintains counsel failed object or otherwise seek a curative instruction regarding the prosecutorial misconduct during closing argument. (Id.).

6.   He was denied effective assistance of counsel, where his lawyer failed to investigate or present material evidence and legal argument at sentencing. (Cv-DE#1:8). He also faults counsel for failing to object to the prosecution's use of unreliable, unlawful evidence to determine the movant's guideline range and ultimate sentence. (Id.).

7.   He was denied effective assistance of counsel, where his lawyer failed to move for a downward departure or downward variance pursuant to 18 U.S.C. §3553(a). (Cv-DE#1:9).

2

8. He was denied effective assistance of counsel, where his lawyer failed to argue at sentencing and raise on appeal the lawfulness of his sentence in light of the Supreme Court's decision in <u>Booker</u>.[2] (Cv-DE#1:10).

9. He was denied effective assistance of counsel, where his lawyer failed to investigate or present the strongest issues on appeal, and failed to preserve viable issues for collateral review. (Cv-DE#1:11).

10. His trial counsel labored under an actual conflict of interest which adversely affected his performance during all stages of the proceedings. (Cv-DE#1:12).

11. The cumulative effects of counsel's deficiencies warrant vacatur of the convictions and sentences. (Cv-DE#1:13).

12. His constitutional rights were violated when his sentence was increased based upon facts not charged in the indictment, nor submitted or proven to the jury beyond a reasonable doubt. (Cv-DE#1:13-14). He further claims the court used the guidelines in a mandatory, rather than an advisory capacity, and therefore, he is entitled to resentencing. (<u>Id</u>.).

13. His constitutional rights were violated when the court failed to realize it could consider different sentencing ranges in light of the Supreme Court's decisions in <u>Apprendi</u>[3] and its progeny, <u>Blakely</u>[4] and <u>Booker</u>. (Cv-DE#1:14).

14. His sentences violate his constitutional rights for numerous specified reasons. (Cv-DE#1:15).

---

[2] <u>United States v. Booker</u>, 543 U.S. 220, 229 (2004).

[3] <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

[4] <u>Blakely v. Washington</u>, 524 U.S. 296 (2004).

After review of the record, it became apparent that an evidentiary hearing was necessary at least with regard to claims one, four, and ten, as listed above. Alvin Entin, Esquire, was appointed to represent the movant, and an evidentiary hearing was held on November 5, 2009.

## Factual and Procedural History

In order to place the procedural posture of this case in context, a factual and procedural history of the underlying criminal case is required.

The movant and his codefendants were involved in a large scale operation starting from at least September 20, 2000 through April 8, 2004, wherein large quantities of cocaine from various locations in the Caribbean were imported into the United States. (Cr-DE#901:4,56-57,135,145). Crew members and individuals were recruited to take cruises from Miami, New York, and other locations to destinations in the Caribbean in order to retrieve and transport the cocaine into the United States. Some recruits included cruise ship passengers who would retrieve the cocaine from coconspirators on cruise stops in Aruba, Curacao, and other locations. (Cr-DE#895:104-06; Cr-DE#901:151-52,163). The passengers would secret the drugs aboard the ship and then hand it to coconspirator crew members who in turn would hide the drugs on the ship until it was ready for removal once the ship docked in the United States. (Cr-DE#901:151-52,166).

Specifically, as to the movant, the evidence at trial revealed that Timothy Bradley, a criminal investigator with the U.S. Immigration and Customs Enforcement ("ICE") assisted in the arrest of the movant's codefendants, Deanna Reese and Jeane Hall on

4

February 11, 2003. (Cr-DE#895:148; Cr-DE#901:54). Reese testified that she was a former stripper who knew the movant for about eight years, as they both lived in the same town in North Carolina. (Cr-DE#901:53,56,75,88). The movant introduced Reese to Andre Dougan, who was recruiting women to travel on cruises in order to onload and later off load the drugs into the United States. (Cr-DE#901:56-60; Cr-DE#902:14-15). The movant advised Reese that she could earn $5,000.00 for her participation, and also inquired whether Reese's friend, Jeane Hall, would be interested in meeting Dougan and participating in the importation scheme. (Cr-DE#901:58-59,123).

About a month later, the movant introduced Reese to Dougan, at which time Dougan explained to her how the drugs would be offloaded from the ship. (Cr-DE#895:152; Cr-DE#901:60-61). Reese and Hall were then flown to New York to buy clothes which they would wear to conceal the drugs, and then fly back to Ft. Lauderdale to board the cruise ship. (Cr-DE#901:68-70). While aboard the ship, Reese and Hall were contacted by a man who brought the drugs into their room, helping them to tape it onto their bodies. (Cr-DE#901:68-69). He also gave them a number to call in order to find out where the drugs were to be taken. (Cr-DE#901:70). When Reese and Hall disembarked at Key West, they were stop and arrested. (Cr-DE#901:71-72). Reese immediately began cooperating and participated in a controlled delivery that resulted in the arrest of coconspirator Ellis. (Cr-DE#901:71-72; Cr-DE#903:154-56).

After the movant's arrest, he was advised of and waived his rights, and during an interview with Bradley, stated that Dougan had supplied him with cocaine in the past, and had contacted the movant, asking him to obtain female strippers, as well as, women looking to transport drugs on cruise ships. (Cr-DE#902:15-16). The movant first introduced him to one woman, but Dougan felt she was not fit for the job. (Cr-DE#902:18). He then introduced Dougan to

Hall and Reese. (Cr-DE#902:18). According to the movant, Dougan paid him $500.00 for his recruitment of the two women. (Cr-DE#902:20).

On July 13, 2004, a Fifth Superseding Indictment was returned charging the movant, and numerous coconspirators with violations of federal narcotics law. (Cr-DE#607). Specifically, the movant was charged with conspiracy to import five kilograms or more of cocaine (Count 1), possession with intent to distribute five kilograms or more of cocaine (Count 2), two counts of aiding and abetting the importation of 500 grams or more of cocaine (Counts 6-7), two counts of aiding and abetting the importation of five kilograms or more of cocaine (Counts 16-17). (Cr-DE#607). It should be noted that coconspirators Reese and Hall were charged in a separate, related case, 03-10009-Cr-Moore, and both pled guilty pursuant to negotiated plea agreements with the government.

Prior to trial, the movant filed a pretrial motion to suppress his statements on the basis that they were obtained without a voluntary waiver of his <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) rights. (Cr-DE#663). Following an evidentiary hearing, a Report was entered recommending that the motion be denied, finding that the movant was advised of and waived his constitutional rights prior to providing a statement to police. (Cr-DE#900). Thereafter, an Order was entered adopting the Report and denying the movant's suppression motion. (Cr-DE#731).

The movant then proceeded to trial where he was found guilty as charged following a jury verdict. (Cr-DE#781). The movant's motion for new trial was denied by the district court on April 5, 2005. (Cr-DE#800).

Prior to sentencing, a PSI was prepared which revealed as

follows. The movant's base offense level was set at 34, pursuant to U.S.S.G. §2D1.1, because the offense involved at least 15 kilograms, but less than 30 kilograms of cocaine. (PSI ¶149). However, the movant's base offense level was then increased to a level 37, pursuant to U.S.S.G. §4B1.1(a) because the movant was considered a career offender, as he was at least 18 years old at the time of the instant offenses, the offenses were felony controlled substance offenses, and the movant had at least two prior felony convictions in the State of North Carolina for a controlled substance offense and/or a crime of violence. (PSI ¶155).

The probation officer next determined that the movant had a total of 18 criminal history points, resulting in a criminal history category VI. (PSI ¶175). However, the criminal history points were of no import, as the criminal history category for a career offender is always a category VI, in accordance with U.S.S.G. §4B1.1. (PSI ¶175). A total offense level 37 with a criminal history category VI, results in a guideline range of 360 to life in prison. (PSI ¶198). However, pursuant to U.S.S.G. §5G1.1(c)(2), the guideline range becomes life, the statutorily required minimum sentence in this case, based on the government's 851 enhancement. (PSI ¶198). Statutorily, as to each of Counts 1 and 16, the minimum sentence is 20 years and the maximum is life in prison. (PSI ¶197). As to each of Counts 2 and 17, the term is life in prison pursuant to 21 U.S.C. §841(b)(1)(A)(ii) and 21 U.S.C. §851. (PSI ¶197).

On August 10, 2005, the movant was sentenced to a total term of life imprisonment, consisting of two concurrent terms of life imprisonment as to Counts 2 and 17, and two concurrent terms of 360 months imprisonment as to Counts 1 and 16, followed by ten years supervised release. (Cr-DE#874).

Thereafter, trial counsel withdrew and Thomas John Butler, Esquire, was appointed to represent the movant on appeal. (Cr-DE#879). The movant raised the following claims on appeal:[5]

1. The court erred in finding the government's peremptory strikes were not based on a discriminatory reason.

2. Reversal is warranted where the government's speaking objections undermined the credibility of defense counsel.

3. The court erred in advising the jury to disregard certain portions of defense counsel's closing argument, and the cumulative effects arising therefrom warrants the grant of a new trial.

4. The court erred in permitting the government to introduce evidence pursuant to Fed.R.Evid. 404(b).

5. The court erred in denying the movant's motion to suppress.

6. The court erred in admitting Bradley's statements concerning U and Me Fashion Phone records.

On January 25, 2007, the Eleventh Circuit, in a written, but unpublished opinion, affirmed the movant's convictions and sentences. United States v. Roberts, et al., 215 Fed.Appx. 842 (11th Cir. 2007); (Cr-DE#951). 2006 WL 3369524 (11th Cir. 2006); (Cr-DE#494). Certiorari review was denied on October 1, 2007. Williams v. United States, __ U.S. __, 128 S.Ct. 52 (2007).

Thus, the judgment of conviction in the underlying criminal case became final, for purposes of the federal one year limitations period under the AEDPA, at the latest on October 1, 2007, when

---

[5]The claims are gleaned from the movant's initial brief on appeal, located on Westlaw, a legal research database, at United States v. Williams, 2006 WL 2644528 (11th Cir. 2006), and from the Eleventh's Circuit written, but unpublished opinion affirming the movant's convictions and sentences, United States v. Roberts, et al., 215 Fed.Appx. 842 (11th Cir. 2007); (Cr-DE#951).

certiorari review was denied by the Supreme Court.[6] His motion was due to be filed in this court within one year, or no later than October 1, 2008. <u>See</u> <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). This motion to vacate was timely filed less than one year later on September 30, 2008.[7] (Cv-DE#1).

<u>Evidentiary Hearing Claim(s)</u>

The movant raises multiple claims of ineffective assistance of counsel in this §2255 proceeding. After review of the record, it became apparent that an evidentiary hearing was necessary with at least with regard to claims one and four, as listed above.

In his **first claim**, the movant asserts that trial counsel was ineffective for misadvising him regarding the benefits of pleading guilty versus proceeding to trial. (Cv-DE#1:4). According to the movant, counsel did not explain to him that if he rejected the government's plea offer, the government could seek an §851 enhancement prior to trial. (<u>Id</u>.). The movant maintains that had he been properly counseled in this regard, he would have accepted the government's plea prior to the enhancement being filed. (<u>Id</u>.). The claim was not conclusively refuted by the record, and warranted further evidentiary findings. At the November 5, 2009 evidentiary

---

[6]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. <u>Sup.Ct.R</u>. 13; <u>see also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

[7]<u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing). Although not dated, it was received by the Clerk on September 30, 2008, therefore, that will be the date used for calculating the timeliness of the instant case.

hearing, testimony was taken from the movant, and his criminal defense counsel, Albert Z. Levin, Esquire, and the former prosecutor, Assistant United States Attorney ("AUSA") David Gardey.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668, 684-86 (1984). To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 687-88. The court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

There is a "strong presumption in favor of competence, and the petitioner's burden of persuasion--though the presumption is not insurmountable--is a heavy one." Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000). When the trial counsel is experienced, the presumption of competence is even higher. Id. Our review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." Chandler, 218 F.3d at 1313 (quoting Burger v. Kemp, 483 U.S. 776 (1987)). Our review must be highly deferential, and we must avoid second-guessing. Strickland, 466 U.S. at 689.

An attorney's "affirmative misrepresentation in response to a specific inquiry from the defendant may, however, under certain circumstances, constitute ineffective assistance of counsel." United States v. Campbell, 778 F.2d 764, 768-69 (11th Cir. 1985). An attorney has a duty to advise a defendant, who is considering a guilty plea, of the available options and possible sentencing

consequences. Brady v. United States, 397 U.S. 742, 756 (1970); see
also Beckham v. Wainwright, 639 F.2d 262, 267 (5th Cir. 1981)
(holding counsel's misrepresentation that the defendant could only
be sentenced to five years incarceration on withdrawal of his
guilty plea fell "outside of the range of competence of attorneys
in criminal cases")(internal quotations omitted); Finch v. Vaughn,
67 F.3d 909, 915-16 (11th Cir. 1995)(holding counsel's
misrepresentation that the defendant's state sentence would be
served concurrently with his federal sentence constituted erroneous
advice and ineffective assistance of counsel).

   The movant testified that he first learned in June 2004 that
he was the target of an investigation in Miami. Immediately upon
his transfer from North Carolina to Miami, he advised counsel that
he had provided agents with a statement in North Carolina, and
further advised counsel that he wanted to plead guilty and
cooperate with the government. As a result therefrom, defense
counsel set up a proffer meeting with the government. At that time,
the movant recalled being provided a piece of paper to sign. He
specifically recalled counsel advising him that he had signed
thousands of these proffer agreements, and advised the movant to
sign the document. The movant testified that it was his
understanding from counsel's representation that anything he said
during the debriefing would not be used against him. Based on
counsel's advice in this regard, the movant executed the agreement.
After he was debriefed that day, the movant recalled being advised
that the information he provided was merely duplicative to that
previously given to agents in North Carolina. Consequently, the
movant would not be receiving any credit or cooperation from the
government

   At that point, the movant decided to proceed to trial. The
movant, however, never believed that based on his prior criminal

11

history or his involvement in the offense, that he would face life in prison. The movant was unequivocal that at no time prior to this decision, did counsel ever explain that he faced the potential for a life sentence based on the government filing an 851 enhancement. The movant recalled that the first time he heard about such an enhancement was in January or February when counsel visited him and advised him that the government had already filed the 851 information, which would result in doubling the movant's sentence exposure, but never once mentioned that it would result in a term of life imprisonment. The movant also testified that counsel never explained his sentence exposure prior to that time as counsel had not investigated the movant's criminal history. Because the enhancement had been filed, counsel advised movant that there was nothing that could be done, but to proceed to trial. According to the movant, he was steadfast in his testimony that had he known he would receive a mandatory life sentence he would have accepted the government's plea offer prior to the filing of the 851 enhancement.

Likewise, the movant also testified that had he been advised by counsel that, by signing the proffer agreement, he was precluded from testifying on his own behalf at trial, he would never have proceeded to trial. The movant claims he went to trial, without being able to lodge an adequate defense, as he was unaware of the ramifications of the proffer agreement he executed based on counsel's advise. The movant was unequivocal that counsel never reviewed the terms and conditions of the agreement, and merely advised the movant to sign the document.

Specifically, the proffer agreement (Cv-DE#18:Ex.I), provided in pertinent part as follows:

> 3.  No statement or other information provided by your client to the government pursuant to this proffer agreement will

12

be used directly against your client in any criminal case, provided that your client does not violate the terms of this agreement. If your client violates the terms of this agreement, any statements or other information which your client has provided to the government can be used against your client....

4.   The government may use statements made by your client at the proffer and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination, or to rebut any evidence, argument, or representations offered by or on behalf of your client at any stage of a proceeding or criminal prosecution (including bail, trial, and sentencing).

(Cv-DE#18:1-2).

Review of the record supports the movant's allegations in this collateral proceeding that he was precluded from testifying at trial and from lodging an adequate defense based on the inadequacy of counsel. Specifically, the record reveals as follows:

Def.Atty: Your honor, with respect to my first Motion in Limine, it concerns an issue which was brought to my attention by Mr. Gardey yesterday at 4:00, where he reminded me that on or about August 2nd of last year, 2004, my client as well as myself executed what is commonly referred to in this and other districts as a 'Queen For a Day' letter. I have been a criminal defense attorney since 1985. I have represented a number of individuals that have signed these type of letters. In my experience I have never seen a letter which contained the language that this letter does, in paragraph six. I am also going to ask the court to supplement the record by making this a court exhibit at some point.

Court:   I don't have the letter.

13

(Cr-DE#903:91).

Def.Atty:   I know and I apologize. But this was brought to me at 4:00 yesterday afternoon. I have spoken to Mr. Gardey [government] outside. I don't ascribe any major ill will or motive to Mr. Gardey. But he did bring it to my attention. I am thankful for that. But frankly, it's a matter that really should never have been brought to my attention. Not for my lack of diligence, if you will, but because a United States Attorney of this district and from what I understand – maybe I am getting ahead of myself, I had occasion to have a conversation with former Assistant United States Attorney Alan Kaiser who is now in private practice. I was discussing this issue with him, who was with the U.S. Attorney's Office for probably 18 or 19 years.

Court:   The court has met Mr. Kaiser. Go ahead.

Def.Atty:   He advised me–I explained the issue I had with Mr. Gardey. He said, that's the new letter the office is using, I would never allow a client of mine to sign that kind of letter. Frankly, nor would I. Frankly had I, I guess, taken the time to read the letter, which frankly, I have been practicing with the same intent in terms of what these letters protect, that is, situations where my client if he were to testify differently than what he said –

Court:   The court understands your discomfort. But what's in the letter?

Def.Atty:   The letter says, paragraph six, the Government may use statements made by your client at the proffer and all evidence obtained directly or indirectly therefrom for the purpose of cross examination.

The new language is, or to rebut any evidence, argument or representations offered by or on behalf of your client at any stage of a proceeding or criminal prosecution including bail, trial and sentencing.

COURT:   Whether he testifies or not?

14

Def.Atty: Whether or not he testifies. That denies him of his Sixth Amendment right to effective assistance of counsel. It puts my hands behind my back and puts a muzzle over my mouth, if you will. Essentially the only defense, according to this letter, that I could realistically offer would be that the Government hasn't proven its case beyond a reasonable doubt. Frankly, I may go that route in this case. But I don't feel that my client's right to effective assistance should be hamstrung by language that has now been included in this district in these "Queen For a Day" letter.

(Cr-DE#903:92-93)

                    *    *    *

COURT:    You read the paragraph before you sign it, didn't you?

Def.Atty: Probably not. Probably not, Judge. I will tell you that I would confess error. Had I seen that there is no way I would have allowed Mr. Williams to sign that document. I wouldn't have allowed him to submit to a debriefing if I knew my ability to defend him would be –

COURT:    But I have to assume you read it because you and your client signed it. You tell me you don't read things you sign?

Def.Atty: Generally I do read things that I sign, your honor. In this type of situation you have to understand, the rapid-fire nature as to how these things evolve. I'm talking about these debriefing sessions. We are on the run....To me in twenty years I have never seen this language before...

I have sat through many, many debriefings....Frankly, no, I didn't read this letter because I didn't expect to see this kind of change.

(Cr-DE#903:99-100).

15

Moreover, the movant candidly admitted he had prior felony convictions for selling drugs in North Carolina, but states he was unaware of the federal laws and how it applied to him, especially in light of his perceived *de minimus* involvement in this case.

Defense counsel, Alvin Levin, a seasoned criminal defense attorney, testified that he had no independent recollection regarding his discussions with the movant, and "speculates" he went over the indictment and evidence regarding the movant's statements to agents in North Carolina. Levin also could not recall why the movant decided to reject the government's proposed plea offer, nor whether he in fact explained the terms of the proposed plea or the movant's sentence exposure. Moreover, counsel had no recollection regarding any discussions with the movant concerning the filing of an 851 information or its affect on the movant's sentence. In fact, counsel conceded that from the outset of his representation and after September 30, 2004, when plea negotiations broke down as there was going to be no cooperation forthcoming from the government, he never discussed the possibility that the government might file an 851 enhancement. He also could not recall what prompted the movant to change his mind and decide to proceed to trial. However, counsel did recall not having any confidence that the government was going to "do the right thing" and file a motion for downward departure based on substantial assistance.

In addition, counsel candidly admitted that he erred by failing to review the proffer agreement prior to signing it. Likewise, he also admitted he did not go over the terms of the agreement with his client, but rather instructed him to sign the letter without realizing that it contained additional language that he had never seen in past proffer agreements he had executed with clients in this district. Counsel candidly admitted that this error affected his ability to lodge a defense at trial, and had he

16

realized the ramifications thereof, he would never have permitted the movant to sign the agreement.

Assistant United States Attorney David Gardey testified as a government witness at the evidentiary hearing that he was present when the movant and his attorney signed the proffer agreement. AUSA Gardey testified that he would have emphasized to the movant that it was important to tell the truth. After the debriefing, AUSA Gardey recalled sending defense counsel a proposed plea agreement with standard cooperation language contained therein. AUSA Gardey testified that defense counsel proposed that the movant plea to being an accessory after the fact, however, the government refused to consider such a plea. According to AUSA Gardey, he specifically recalls rejecting the defense's offer based on the movant's "extensive criminal history,"[8] as well as, on the fact that he was aware from the debriefing of individuals involved in the cruise ship conspiracy that the movant had been involved in prior drug robberies for which he had not been convicted. AUSA Gardey testified that when no plea agreement appeared to be forthcoming, he filed the 851 information one week prior to the time trial was scheduled to commence. During cross-examination, AUSA Gardey acknowledged that he never memorialized in writing that he was contemplating filing an 851 information, but claims this was relayed to movant's counsel verbally numerous times. He conceded that during his career, the movant has been the only defendant who has ever executed a proffer agreement and then proceeded to trial.

Having carefully attended to the testimony at the evidentiary hearing, the witnesses' demeanor, and the record as a whole, the undersigned credits the testimony of the movant that he was unaware

---

[8]It should be noted that the extensive history the government refers to appear to be prior convictions for possession of cocaine in which the movant received and/or otherwise served a suspended sentence between six to eight months.

of the ramifications of rejecting the government's plea offer. The court finds credible the movant's testimony that had he been apprised that the government would be filing an 851 information, he would have accepted the government's plea offer rather than risk a life sentence by proceeding to trial. This court finds troublesome that counsel had no notations in his file, and no recollection of advising the movant regarding his sentence exposure if he rejected the government's plea. In fact, counsel basically could recall nothing of substance that would confirm he relayed the terms of the plea to the movant and adequately explained the ramifications if the movant rejected the plea and proceeded to trial. To the contrary, this court credits the movant's testimony that he was not properly counseled regarding whether he should proceed to trial or accept the government's plea offer. This conclusion is supported by the uncontroverted fact that the movant was not properly advised about the benefits of accepting the plea versus the risks of proceeding to trial, including the potential for a life sentence based on the government's 851 enhancement. Thus, the court finds that the movant was not adequately advised of the terms of the government's plea offer, and had he been properly counseled, the movant would have accepted the plea and not proceeded to trial.

Here, the movant has established a *prima facie* case as to <u>Strickland's</u> first prong, that counsel's performance was constitutionally deficient. The evidence showed that the movant was not properly counseled regarding the terms of the plea and the risks associated with proceeding to trial, which included the filing of an 851 enhancement. In short, the movant has carried his burden of showing that counsel's performance was deficient. <u>Brady</u>, 397 U.S. at 756.

Moreover, the movant has also satisfied the second prong of <u>Strickland</u>, as this court finds credible the movant's testimony

that but for counsel's inadequate advice, he would have accepted the government's plea offer. A significant sentencing disparity in combination with defendant's statement of his intention to accept a plea is sufficient to support a prejudice finding regarding a misadvice of plea by counsel. See Pham v. United States, 317 F.3d 178, 182 (2nd Cir. 2003)(citing United States v. Gordon, 156 F.3d 376, 380 (2nd Cir. 1998). This court finds inconceivable that the movant would have insisted on proceeding to trial in light of the terms and conditions as contained in the proffer agreement. Furthermore, this court finds that had counsel properly advised the movant regarding his sentencing exposure, which included the potential filing of an 851 information, the movant would have accepted the plea.

It is therefore recommended that claim one be granted, and that the movant be given the opportunity to plead guilty, receiving the same benefits he would have received had the offer been conveyed and accepted, prior to the filing of the 851 enhancement.

In **claim four**, the movant asserts that he was denied effective assistance of counsel, where his lawyer misadvised and/or otherwise precluded the movant from testifying on his own behalf at trial. (Cv-DE#1:7). According to the movant, once plea negotiations with the government fell through, he believed he was going to testify on his own behalf at trial. The movant claims that he would have testified at trial, rebutting the government's evidence.

At the evidentiary hearing in this case, the movant testified unequivocally that he wanted to testify in order to explain that he was initially asked by his codefendant Dougan to recruit two strippers for the codefendant. He initially located one, but the movant claims she was not satisfactory, and so he ultimately recruited Reese and Hall as strippers. At that time, the movant

19

claims he never questioned Dougan's need for two strippers and was thus unaware that Dougan intended to utilized these women to import drugs into the United States. The movant denied ever advising Reese and Hall that they were being recruited to pick up drugs. It was not until much later, when he was paid $500.00 by Dougan for recruiting the women and driving them to the airport that he learned they were going to be involved in importing drugs. According to the movant, after he was paid the $500.00, he completely disassociated himself from Dougan.

The movant was direct and forthright in his testimony that, as he heard the government's evidence at trial, he believed he would be called to testify on his own behalf. Defense counsel testified that the movant's defense was severely curtailed once the government brought to his attention that if he pursued any defense which would contradict the statements provided by the movant during his debriefing, then those statements would be used by the government in accordance with the proffer agreement. Defense counsel candidly explained his frustration when he realized he had advised his client to sign an agreement prior to reviewing it, and then learned the agreement contained additional language he had never seen used in proffer agreements in this district. According to defense counsel, the inclusion of this additional language severely restrained his ability to lodge an adequate defense on behalf of his client. Attorney Levin was contrite and apologetic, insisting it was his fault that he did not review the agreement and insisted his client execute it. Counsel insisted that had he properly reviewed the proffer, he would never have allowed the movant to execute it.

Of course, a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v.

Teaque, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel.   Teaque, supra; Brown v. Artuz, 124 F.3d 73, 77-78  (2 Cir. 1997).

The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under  Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11 Cir. 1999)(citing Teaque, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir. 1998). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

Under this inquiry, proof by a defendant that his counsel had rejected the defendant's decision to testify and refused to call him to the stand, or proof that counsel never informed the defendant of his right to testify, would suffice to meet the first prong of the Strickland test: that counsel's performance fell below an objective standard of reasonableness. Teaque, 953 F.2d at 1534. Therefore, a proffer of such proof in a §2255 motion would necessitate further factual inquiry if it appears that the second Strickland prong, prejudice, may also be met.

In Nichols v. Butler, 953 F.2d 1550 (11th Cir. 1992) (en banc), the Court found that the Petitioner was prejudiced by his attorney's refusal to let him testify, noting that the case was extremely close. The Court held that in that case there was a reasonable probability that the result of the case would have been different had the petitioner testified, given the following factual scenario:

> [S]hortly after midnight two men went into a Zippy Mart. The first man entered alone and asked for beer. A store employee testified that he glanced at this man for "not even a second." Shortly thereafter, the second man

> entered the store carrying a sawed-off shotgun and told the employee to get behind the counter and get the money. The first man then returned to the front of the store, at which time the store employee "glanced at him" for "less than a second." At trial, the only evidence presented to the jury linking Nichols to the robbery of the Zippy Mart was the store employee's identification of Nichols as the first man who entered the store. A fingerprint removed from the door of the beer locker at the store did not match those of Nichols, and a tire print next to the store did not match those of Nichols' vehicle... Moreover, a defense witness, Donald Hannah, testified at trial that it was he and another man, not Buddy Nichols, who robbed the Zippy Mart that night... Nichols himself did not testify.

<u>Nichols v. Butler</u>, <u>supra</u> at 1551.

After consideration of the testimony of the movant and his counsel, and close observation of their demeanor, the court finds the movant's testimony credible to the extent that he advised counsel that he wanted to testify on his own behalf, and that counsel impeded that request based in part on the fact that he ignorantly signed and counseled the movant to sign a proffer agreement containing restrictive language regarding the extent to which the movant could pursue a defense at trial. The court further finds troublesome counsel's lack of any specific recollection as to the underlying criminal case, and the fact that his own file, contained no memorandums or notes regarding conversations with his client. Thus, the movant has established pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) that counsel's performance fell below an objective standard of reasonableness.

The court further finds that the movant has also satisfied the second prong of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), by demonstrating potential prejudice stemming from counsel's deficient performance. As will be recalled, the movant may have presented evidence of his minor role in recruiting Reese and Hall as strippers. He could have testified that he had no knowledge of the nature or extent of the drug conspiracy. In fact, the movant's

22

proffered testimony may have been critical to refute allegations made by Reese at trial.[9] Under these circumstances, there is a reasonable probability that, but for counsel's unprofessional conduct, the movant may have obtained an acquittal, either by jury verdict or by the grant of a Rule 29 motion. Consequently, it is the recommendation of the undersigned that this motion to vacate be granted as to this claim and that the movant be afforded a new trial.

<u>Remaining Claims</u>

The remaining claims raised by the movant in this collateral proceeding challenge counsel's effectiveness during pre-trial and trial. However, if the movant's first or fourth claim is granted, as discussed *supra*, his convictions will be vacated, and a new plea and/or trial will be had. Thus, the remaining claims will be moot. Nevertheless, the claims will be discussed briefly *infra.*

In **claim two**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to file a pretrial motion to suppress evidence, and to seek dismissal of the indictment. (Cv-DE#1:5). This claim is clearly refuted by the record which reveals that counsel did, in fact, file a motion to suppress his post-arrest statements. (Cr-DE#663). Thus, the movant can neither establish deficient performance nor prejudice pursuant to <u>Strickland</u> and is entitled to no relief on this claim.

In **claim three**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to present material, exculpatory evidence and testimony at trial, and further

---

[9]Reese testified that the movant approached her, indicating that Dougan was interested in recruiting girls to offload drugs from cruise ships. (Cr-DE#901:56). According to Reese, the movant explained that his friend, who he had met in prison, would pay her $5,000.00 for importing the drugs. (<u>Id</u>.:58).

failed to object to the unlawful admission of evidence by the prosecution. (Cv-DE#1:6). The movant does not identify what exculpatory evidence should have been presented. This conclusory allegation, bereft of record support, is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

In **claim five,** the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to request appropriate jury instructions and to lodge objections to the proposed instructions. (Cv-DE#1:8). He also maintains counsel failed object or otherwise seek a curative instruction regarding the prosecutorial misconduct during closing argument. (<u>Id</u>.). The movant does not identify which instructions counsel should have objected to, nor does he identify what precise statements by the prosecution during closing argument were so egregious as to require a new trial. Thus, such a conclusory allegation must fail. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

Briefly, as to the prosecutorial misconduct claim, independent review of the record reveals that the government during its closing argued that the evidence had established that the movant was being supplied drugs by Dougan. (Cr-DE#907:44-49). Likewise, the prosecution summarized Reese's testimony that she was a long-time friend of the movant, who had recruited her to go on a cruise in order to pick-up and later off-load drugs from the ship. (<u>Id</u>.).

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974); <u>Hall v. Wainwright</u>, 733 F.2d 766, 733 (11 Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, <u>Hance v.</u>

Zant, 696 F.2d 940 (11 Cir.), cert. denied, 463 U.S. 1210 (1983);
and "[s]uch a determination depends on whether there is a reason-
able probability that, in the absence of the improper remarks, the
outcome of the trial would have been different." Williams v.
Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. denied, 485 U.S. 964
(1988).

The Eleventh Circuit has held in the context of federal
criminal prosecutions that prosecutorial conduct requires a new
trial only if the remarks 1) were improper and 2) prejudiced the
defendant's substantive rights. United States v. Cannon, 41 F.3d
1462, 1466 (11 Cir. 1995); United States v. Cole, 755 F.2d 748, 767
(11 Cir. 1985). The remarks must be reviewed in context and the
probable impact upon the jury must be assessed. United States v.
Cannon, supra at 1469; United States v. Stefan, 784 F.2d 1093, 1100
(11 Cir. 1986).

It is evident that the prosecutor's comments did not have a
substantial and injurious effect or influence in determining the
jury's verdict. Brecht v. Abrahamson, 507 U.S. 619 (1993). In fact,
the prosecutor's comments during closing argument summarized the
facts adduced at trial. Moreover, it is also evident that the
fundamental fairness of the movant's trial was not affected in this
regard. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974);
Hall v. Wainwright, 733 F.2d 766, 733 (11 Cir. 1984); Hance v.
Zant, 696 F.2d 940 (11 Cir.), cert. denied, 463 U.S. 1210 (1983);
Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. denied,
485 U.S. 964 (1988). Counsel was not ineffective for failing to
pursue this nonmeritorious claim. Under these circumstances, the
movant is entitled to no relief on this claim. In passing, it
should further be noted that the court properly instructed the jury
that what the attorney's say during opening and closing is not
evidence in the case. Thus, it is presumed the jury following the

court's instructions in this regard in reaching its verdict.

In **claim six**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to investigate or present material evidence and legal argument at sentencing. (Cv-DE#1:8). He also faults counsel for failing to object to the prosecution's use of unreliable, unlawful evidence to determine the movant's guideline range and ultimate sentence. (Id.).

The movant does not identify what evidence and legal argument should have been presented by counsel at sentencing, nor does he indicate what evidence was unlawfully introduced at sentencing to determine the movant's guideline range. This claim, bereft of factual support, is subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962).

If the movant means to argue that counsel was ineffective for failing to investigate the prior convictions relied upon by the government to support the 851 enhancement, that claim is clearly refuted by the record. See Cr-DE#888-Transcript of Sentencing.  At sentencing, the court overruled the movant's objections to the predicate offenses used to enhance his sentence. (Id.:9). The court in imposing a life sentence stated in pertinent part as follows:

> All right. The court is fully informed of the facts and circumstances surrounding the crime and no legal reason has been shown as to why the sentence should not now be imposed.
>
> Moreover, the Court has considered the statements of the parties, has undertaken a complete review of the entire Presentence Investigation Report, has reviewed and considered the advisory guidelines and has considered the factors set forth in 18, USC, 3553(A)(1) through and including (7).

> The Court shall impose a statutory required
> sentence of life imprisonment.

(Cr-DE#888:39).

Independent review of the record reveals that the court's finding in this regard was not error. Moreover, the movant has offered no evidence in this collateral proceeding to establish that these prior convictions were unlawfully used to enhance his sentence. Consequently, no deficient performance or prejudice has been establishing arising from counsel's failure to pursue this claim at sentencing or on direct appeal.

In **claim seven**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to move for a downward departure or downward variance pursuant to 18 U.S.C. §3553(a). (Cv-DE#1:9). Even if counsel has argued for a downward departure, no showing has been made in this collateral proceeding that such a request would have been granted. To the contrary, the court in imposing sentencing specifically noted on the record that it had considered the §3553(a) factors. Consequently, no prejudice pursuant to <u>Strickland</u> has been established and the movant is therefore entitled to no relief on this claim.

In **claim eight**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to argue at sentencing and raise on appeal the lawfulness of his sentence in light of the Supreme Court's decision in <u>Booker</u>. (Cv-DE#1:10).

It appears that the movant is claiming that his life sentence is unlawful because it was based on prior convictions which were not charged in the indictment and proved beyond a reasonable doubt. The law is clear that there is no Sixth Amendment violation when a district court enhances a sentence based on prior convictions. <u>See United States v. Gallegos-Aquero</u>, 409 F.3d 1274 (11th Cir. May 18,

2005), citing, United States v. Orduno-Mireles, 405 F.3d 960, 962-963 (11th Cir. 2005)(holding that Blakely v. Washington, 524 U.S. 296 (2004) and its progeny, United States v. Booker, 543 U.S. 220 (2005), did not disturb the Supreme Court's prior holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998), that the government need not allege in its indictment nor prove beyond a reasonable doubt that a defendant had prior convictions in order to use those convictions for purposes of enhancing a defendant's sentence.). Put another way, because the prior-conviction exception remains undisturbed after Booker, a district court does not err by relying on prior convictions to enhance a defendant's sentence. United States v. Orduno-Mireles, supra at 962. See also, United States v. Camacho-Ibarquen, 404 F.3d 1283, 1290 (11th Cir. 2005); United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005)(same); United States v. McGowan, 134 Fed.Appx. 361 (11th Cir. 2005)(same).

Even if counsel had raised such an objection to the movant's enhanced sentence, which was based on his prior convictions and his status as a career criminal, it would have been overruled based on the Supreme Court's decision in Almendarez-Torres. Any further argument in this regard would have been meritless, and a failure to raise a meritless argument will not support an ineffective assistance of counsel claim. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999)("An attorney's failure to raise a meritless argument...cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Under these circumstances, the movant is entitled to no relief on this basis.

In **claim nine**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to investigate or

present the strongest issues on appeal, and failed to preserve viable issues for collateral review. (Cv-DE#1:11). Again, the movant does not identify what claims should have been preserved, therefore, this claim is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

In **claim ten**, the movant asserts that his trial counsel labored under an actual conflict of interest which adversely affected his performance during all stages of the proceedings. (Cv-DE#1:12). The movant does not specify to whom counsel owed another "duty" to which conflicted with his representation. He provides not facts to support the claim. (Cv-DE#1:12).

At the evidentiary hearing, movant's counsel stated on the record that the movant was not proceeding with this claim. Regardless, the movant is entitled to no relief on this claim as he has failed to make a showing that an actual conflict of interest existed. Furthermore, even if the Court were to assume, without deciding, that an actual conflict existed, the movant has failed to establish that he was adversely affected due to the conflict.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense which includes two correlative rights, "the right to be represented by counsel of choice" and "the right to a defense conducted by an attorney who is free from conflicts of interest." <u>See</u> <u>United States v. Ross</u>, 33 F.3d 1507, 1523 (11th Cir. 1994); <u>see also</u>, <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981). However, it is well settled that joint representation does not, in itself, violate this guarantee. <u>Holloway v. Arkansas</u>, 435 U.S. 475 (1978); <u>United States v. Benavidez</u>, 664 F.2d 1255, 1258-59 (5th Cir. 1982).

A movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that: (1) his attorney had an actual, not speculative, conflict of interest, and (2) the conflict adversely affected counsel's performance. United States v. Novaton, 271 F.3d 968, 1010-1011 (11 Cir. 2001), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); accord, United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. United States v. Novaton, 271 F.3d 968, 1010 (11 Cir. 2001); Burden v. Zant, 24 F.3d 1298, 1305 (11 Cir. 1994).

The Eleventh Circuit has adopted a test to distinguish actual from potential conflicts in the context of joint representation of codefendants. The movant must "point to specific instances in the record to suggest an actual conflict or impairment of their interests, make a factual showing of inconsistent interests, and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." Barham v. United States, 724 F.2d 1529, 1532 (11th Cir.), cert. den'd, 467 U.S. 1230 (1984); see also, Porter v. Wainwright, 805 F.2d 930, 939-40 (11th Cir. 1986); see e.g., Turnquest v. Wainwright, 651 F.2d 331, 333 (5th Cir. 1981); Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999), quoting, Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987).  No such showing has been made here.

It is true that a movant need not show that the result of the proceeding would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. Strickland, 466 U.S. at 694. To prove an

30

adverse effect, a defendant must: 1) "point to some plausible alternative defense strategy or tactic" that might have been pursued, 2) "demonstrate that the alternative strategy or tactic was reasonable"[10] under the facts in his case, and 3) "show some link between the actual conflict and the decision to forgo the alternative strategy of defense."[11] <u>Novaton</u>, <u>supra</u> at 1011, <u>citing</u> <u>Freund v. Butterworth</u>, 165 F.3d 839, 860 (11 Cir. 1999) (en banc). In the absence of a showing of an "adverse effect," prejudice is not presumed to flow from a conflict of interest. <u>Id</u>. In this case, no actual conflict or adverse effect has been demonstrated. Consequently, the movant cannot prevail on this claim.

In **claim eleven,** the movant asserts that the cumulative effects of counsel's deficiencies warrant vacatur of the convictions and sentences. (Cv-DE#1:13). If the court accepts the recommendations contained herein, then this claim is moot, as vacatur is warranted at least with regard to claims one and four, as listed above.

In **claim twelve**, the movant asserts that his constitutional rights were violated when his sentence was increased based upon facts not charged in the indictment, nor submitted or proven to the jury beyond a reasonable doubt. (Cv-DE#1:13-14). He claims the court used the guidelines in a mandatory, rather than an advisory capacity, and therefore, he is entitled to resentencing. (<u>Id</u>.). This claim is clearly refuted by the record. As previously noted in

---

[10]Because prejudice is presumed under <u>Strickland</u>, 466 U.S. at 692, the movant "'need not show that the defense would necessarily have been successful if [the alternative strategy or tactic] had been used,' rather he only need prove that the alternative 'possessed sufficient substance to be a viable alternative.'" <u>Freund</u>, 165 F.2d at 960, <u>citing</u>, <u>United States v. Fahey</u>, 769 F.2d 829, 836 (1st Cir. 1985).

[11]In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. <u>Novaton</u>, <u>supra</u> at 1011, <u>citing</u>, <u>Freund</u>, 165 F.3d at 860.

this Report, the court considered the guideline range, as well as the statutory factors, when imposing sentence. Consequently, counsel was not ineffective for failing to raise this issue either at sentencing or on appeal.

In **claim thirteen**, the movant asserts that his constitutional rights were violated when the court failed to realize it could consider different sentencing ranges in light of the Supreme Court's decisions in <u>Apprendi</u> and its progeny, <u>Blakely</u> and <u>Booker</u>. (Cv-DE#1:14). This claim is a mere reiteration of the arguments raised in relation to claim eight above and should therefore be denied for the reasons expressed therein.

In **claim fourteen,** the movant asserts that his sentences violate his constitutional rights for numerous specified reasons. (Cv-DE#1:15). The movant claims generally, without any factual support whatsoever, that his convictions and sentences violate his "right to freedom of speech, to be free from unreasonable searches and seizures, due process of law, right to counsel, to jury trial, to confront witnesses, present a defense, to compulsory process, and to be free from cruel and unusual punishment." (<u>Id</u>.). The movant's litany of legal issues, without any factual support again is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962).

<u>Conclusion</u>

It is therefore recommended that Claim One of this motion to vacate be granted. Alternatively, if the recommendation as to claim one is rejected, then this Court recommends that the motion be granted as to Claim Four and that a new trial be had. Finally, it is further recommended that the remaining claims be dismissed, as moot, or alternatively, denied on the merits.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 19th day of November, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Alvin Entin, Esquire
     Attorney for Movant
     110 S.E. 6th Street, Suite 1970
     Ft. Lauderdale, FL 33301
     Phone: 954/761-7201
     Fax: 954/767-8343

     David Haimes, AUSA
     United States Attorney's Office
     11200 N.W. 20th Street
     Miami, FL 33172
     Phone: 305/715-7646
     Fax: 305/715-7639